[Civ. No. 6981. Fourth Dist. Aug. 28, 1963.]

ALBERT I. SCHLEIMER, as Trustee, etc., Plaintiff and Respondent, v. MACK STRAHL, Defendant and Appellant.

*Assigned by Chairman of Judicial Council.

Sankary, Sankary & Horn and Morris Sankary for Defendant and Appellant.

Charles A. Pratt for Plaintiff and Respondent.

GRIFFIN, P. J.—Plaintiff-respondent, Albert I. Schleimer, as trustee under the last will and testament of Nellie F. Schleimer, deceased, owned two stores under an old hotel operated by plaintiff. Plaintiff leased them to defendant under a lease dated July 1, 1955, and to expire May 31, 1964. ██ Plaintiff brought this action for rents, etc., and for declaratory relief to determine, among other things, the question of his liability for insurance premiums on a water damage policy under the lease provisions. The lease with its amendments provided as follows:

"It is agreed between the parties hereto that henceforth the Lessor shall not be liable for any damage caused by the failure of the sprinkler system or because of any breaks or leaks in the boiler, water or steam lines, or for any other damage caused by water or floods, or because of the inadequacies of said premises in any manner whatsoever."

Paragraph seventh provided as follows: "Lessor agrees that Lessee may purchase a commercial block policy to cover such water damage to Lessee's store equipment, fixtures, furniture and stock of merchandise located in the above premises so leased, as well as in the premises at 1170 and 1174 Third Avenue, San Diego, and 231 'B' Street, San Diego, and the space occupied by the Lessee in the basement of the above-numbered store rooms."

In addition, an addendum to the lease provided: "That Lessor shall pay to Lessee, during the term of this lease, the additional premium, if any, charged by the insurance carrier to cover said additional insurance coverage."

The water damage coverage under a commercial block policy was in effect for a period of approximately four years

ending December 31, 1959. The premiums for water damage coverage under the commercial block policies for the period from February 1956 to December 1959 were only $1,530.99. Thereafter, the lessee could not obtain water damage coverage under a commercial block policy. This was because there had been frequent water damage claims on the premises. Thereafter the lessee could obtain water damage insurance coverage only from Lloyd's of London at a substantially larger rate. That rate was approximately $1,600 per year, an amount which was about four times greater than the cost of the earlier coverage.

The trial court found that the words "commercial block policy" do have a technical meaning, and therefore the court had to give effect to the words used. It was the court's opinion that to give a broader meaning to the words used would amount to rewriting the contract of the parties. ■ A commercial block policy is one which insures for many types of risk, such as fire, theft, burglary, water damage, liability, etc. Because several risks are covered in one policy, the cost of insuring each individual risk is less than it would be if the risks were insured separately. ■ The court found and held that the plaintiff was liable to the defendant only for the proportion of the commercial block policy premiums incurred through December 1959 which were attributable to the inclusion of water damage as an included risk, and,

". . . that by the terms and provisions of said leases the plaintiff is not obligated to pay to the defendant any sums whatsoever on account of any insurance premiums, for water damage or otherwise, save and except the additional premiums, if any, charged by defendant's insurance carrier for such additional water damage coverage under a commercial block policy; and that by the terms and provisions of said leases the plaintiff has no duty or obligation to provide or furnish insurance coverage against water damage to defendant's store equipment, fixtures, furniture or stock of merchandise, or otherwise."

Defendant now argues that where a lease agreement provides that the lessee may purchase insurance referred to as "commercial block policy" to cover water damage and the lessor agrees to pay to the lessee any additional premium for such additional insurance coverage, the lessor is obligated to pay the additional premium paid by the lessee for a Lloyd's of London policy when the lessee is unable to obtain water

damage coverage under a commercial block policy. In effect, the defendant is urging that the water damage claims which caused the cancellation of the commercial block policy were necessitated by reason of the poor pipes in the plaintiff's water system or the negligence of occupants of the hotel rooms in the hotel operated by plaintiff in the floors above defendant's leased premises; that since the plaintiff has caused the cancellation of the commercial block policy, he should be required to pay the cost of the replacement insurance. Defendant urges that the intent of the parties was that the plaintiff guard against the peril of water damage and the designation of a particular type of coverage was made only because that was the usual type coverage and this designation was not meant to be an exclusive definition of the plaintiff's liability.

Plaintiff urges that the written lease clearly and explicitly provides that the lessee may purchase a "commercial block policy" of insurance to cover water damage and that the lessor shall pay to the lessee the additional premium, if any, charged by the insurance carrier for only such coverage. It was held by the court that the lessor was not obligated to pay the lessee the premium for water damage coverage which the lessee elected to purchase under a policy which was not a commercial block policy, in the absence of a showing that the words "commercial block policy" were not intended to have their technical meaning.

It is apparent from the agreement that it did not obligate the defendant to purchase a commercial block policy, nor did it obligate defendant to furnish such policy. It was merely agreed that lessee *may* purchase a "commercial block policy." In fact the defendant did not purchase the commercial block policy until February 1956, about seven months after the execution of the lease. There is nothing to show that the agreement was predicated upon the continuing availability of a commercial block policy. There was no provision made in the written agreement for a change to any other form of policy in case of inability of defendant to obtain a commercial block policy. It was this commercial block policy that the parties had in mind at the time of making the agreement and no other. So it could not be said that plaintiff had misrepresented the facts or was guilty of any fraud. The court properly found under the agreement that it was not the intention of plaintiff that he would pay for any other kind of policy and particularly at the increased rate indicated. The provisions of the lease are not ambiguous, and

courts may not rewrite contracts for the parties in the absence of a showing that the words were not intended to have their technical significance. While it might well appear more equitable to compel plaintiff to bear at least the amount he was formerly paying on the commercial block policy previous to the change, unless the contract is ambiguous, its meaning must be determined from the words used, and the courts will not, because a more equitable result might be reached thereby, construe into a contract provisions that are not therein. (*Southern Calif. Gas Co.* v. *Ventura etc. Co.*, 150 Cal.App. 2d 253 [309 P.2d 849].)

 Some contention is made that it was plaintiff's negligence or that of his tenants which caused the water leakage. The record does not disclose this as a fact. Although subsequent water leakage did occur causing considerable damage, it appears that after the last one the insurer's agent notified defendant that he had to accept a higher deductible on his commercial block policy or it would be cancelled. Defendant refused and the policy was cancelled. It was then that defendant was troubled with obtaining new insurance of that class and elected to take the Lloyd's of London straight water damage coverage at the higher rate. The construction given the contract by the trial court cannot be disturbed on appeal.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.